IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RAY SALINAS, #427301-77,    §
       Movant,    §
           §
v.    §      No. 3:17-CV-1864-N-BT
           §      (No. 3:11-CR-19-N-1)
           §
UNITED STATES OF AMERICA    §
       Respondent.    §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Movant Ray Salinas, a federal prisoner, has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his federal sentence. Dkt. No. 1. Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, the Court referred Salinas's § 2255 motion to the United States magistrate judge for findings of fact, conclusions of law, and a recommendation. The undersigned magistrate judge finds and concludes that Salinas's § 2255 motion is untimely, but he is entitled to equitable tolling. Because his enhanced sentence under 18 U.S.C. § 924(e) is no longer lawful after *Johnson v. United States*, 135 S. Ct. 2551 (2015), the magistrate judge recommends the Court grant Salinas's § 2255 motion, vacate his sentence, and resentence him without the enhancement.

## I.    Background

In 2011, Salinas pleaded guilty to being a felon in possession of a firearm. *United States v. Salinas*, 3:11-cr-19-N (01) (N.D. Tex.), Dkt. No. 29. Because Salinas also admitted to having three prior Texas convictions (two for unlawful

delivery of a controlled substance and one for aggravated sexual assault of a child under 14), he was subject to an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *United States v. Salinas*, 3:11-cr-19-N (01) (N.D. Tex.), Dkt. No. 22. Accordingly, the Court sentenced him to 180 months in federal prison—to be served consecutive to several pending state charges (which were later dismissed) and concurrent to others. *United States v. Salinas*, 3:11-cr-19-N (01) (N.D. Tex.), Dkt. No. 29. The Court entered judgment on August 17, 2011. *Id.* Thereafter, Salinas returned to a Texas prison to serve the remainder of an undischarged state sentence.

Salinas filed a direct appeal from the Court's judgment. Attorney Kevin Joel Page ("Attorney Page") from the office of the Federal Public Defender ("FPD") represented Salinas on direct appeal. *United States v. Salinas*, No. 11-10803 (5th Cir. 2011), Dkt. No. 7. Salinas's conviction and sentence were affirmed on direct appeal, and Attorney Page prepared a petition for a writ of certiorari on Salinas's behalf. *United States v. Salinas*, 486 F. App'x 491 (5th Cir. 2012) (per curiam). Page sent Salinas a bound copy of his petition for a writ of certiorari on January 10, 2013, the last communication between the two. Dkt. No. 30 at 23-25. After receiving his certiorari petition, Salinas thought he won his direct appeal. *Id.* at 32. In fact, however, the United States Supreme Court denied Salinas's petition on February 19, 2013, but Page never communicated that fact to Salinas. *Salinas v. United States*, 568 U.S. 1184 (2013), Dkt. No. 30 at 11-12.

While Salinas's direct appeal was pending, a record-keeper with the Federal Bureau of Prisons ("BOP") mistyped Salinas's release date into the E-designate System, keying in July "2013" instead of July "2023." *United States v. Salinas*, 3:11-cr-19-N (01) (N.D. Tex.), Dkt. No. 57 at 12-13. Because of the error, the BOP's records reflected Salinas was not subject to a federal detainer after July 2013. *Id.* at 14-15. The erroneous information also was reflected on Salinas's "time sheet," which showed the amount of time that remained on Salinas's Texas sentence. When Salinas checked his time sheet in 2012, it listed a federal detainer; when he checked the time sheet again in late 2013 or early 2014, the detainer had been removed. Dkt No. 30 at 33, 36-37. Salinas testified under oath that he thought that the detainer was removed because he won his appeal in the Supreme Court. *Id.* at 35, 37.

On June 26, 2015, the United States Supreme Court announced its decision in *Johnson*, striking down a portion of the ACCA's definition of the phrase "violent felony." 135 S. Ct. at 2563. In *Johnson*'s wake, the United States Sentencing Commission created a list of defendants who had received enhanced sentences under the ACCA. Dkt No. 30 at 13. This Court—and, in turn, the FPD in this District—used that list to identify prisoners who might be eligible for *Johnson* relief. *Id.* at 14-15. Relying on the list, the FPD contacted numerous defendants to alert them about *Johnson* and to file § 2255 motions on their behalf. *Id.* Because the BOP's records showed that Salinas was released from federal custody in 2013, his name was omitted from the Sentencing Commission's list. *Id.* at 15. That meant

the FPD never contacted Salinas to inform him about *Johnson*—which would have alerted him that he was still subject to a federal sentence—or file a § 2255 motion on his behalf.

Salinas's erroneous belief that he had won his direct appeal was reinforced on July 15, 2016, when he was released from state custody, left prison, and reentered society. *See United States v. Salinas*, 3:11-cr-19-N (01) (N.D. Tex.), Dkt. No. 39. Salinas complied with his state parole obligations, but in May 2017, the federal government realized that it had released Salinas from its custody by mistake. *See United States v. Salinas*, 3:11-cr-19-N (01) (N.D. Tex.), Dkt. No. 57 at 9-10. After the government realized its error, it moved the Court to recommit Salinas to federal custody in June 2017. *United States v. Salinas*, 3:11-cr-19-N (01) (N.D. Tex.), Dkt. No. 39.

At the end of a hearing on the government's motion, Salinas made an oral motion for relief under § 2255 and asked the Court to release him pending the disposition of his § 2255 motion. *United States v. Salinas*, 3:11-cr-19-N (01) (N.D. Tex.), Dkt. No. 57 at 43-44. The Court ordered that Salinas be taken into federal custody—so that the Court had jurisdiction over his § 2255 motion—and then released him pending its ruling on this § 2255 motion. *Id.* at 44.[1]

Salinas later amended his § 2255 motion in writing. Dkt. No. 1. He argues that his enhanced sentence, under § 924(e), must be vacated in the wake of

---

[1]    Salinas's release was later revoked. *United States v. Salinas*, 3:11-cr-19-N (01) (N.D. Tex.), Dkt. No. 52.

*Johnson.* Specifically, he argues that his Texas conviction for aggravated sexual assault of a child under 14—in violation of Texas Penal Code § 22.021—is no longer a violent felony because it does not have as an element the use, attempted use, or threated use of physical force against the person or property of another. Dkt. No. 1 at 2-4.

The government argues that Salinas's motion is barred by the one-year statute of limitations that governs § 2255 proceedings. Dkt. No. 13 at 8-15. Alternatively, the government urges that Salinas's motion is meritless. *Id.* at 15-19.

## II.    Legal Standards & Analysis

### AEDPA's Statute of Limitations

Section 2255 proceedings are governed by a one-year statute of limitations. ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996, Pub. L. 104-132, 110 Stat. 1214 (1996) (the "AEDPA"), *codified at* 28 U.S.C. § 2255(f). The statute provides that the limitations period shall run from the latest of—

> (1)    the date on which the judgment of conviction becomes final;
>
> (2)    the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3)    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

Salinas was sentenced under § 924(e)(2)(B)(ii), and he asserts a right that the Supreme Court first recognized in *Johnson*. Section 2255(f)(3) "provides that a motion must be filed within one year from the latest of 'the date on which the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review.'" *United States v. Williams*, 897 F.3d 660, 662 (5th Cir. 2018) (quoting § 2255(f)(3)). "The Supreme Court held in *Johnson* that § 924(e)(2)(B)(ii) is unconstitutionally vague—which commenced the one-year clock for defendants sentenced under that statute . . . ." *Id.* Therefore, Salinas's statute of limitations began to run on June 26, 2015—the date on which *Johnson* was announced. *See* 28 U.S.C. § 2255(f)(3); *see also Beeman v. United States*, 871 F.3d 1215, 1220 (11th Cir. 2017) (holding that *Johnson* claims trigger § 2255(f)(3) because *Johnson* announced a new rule of constitutional law that applies retroactively to cases on collateral review); *United States v. Snyder*, 871 F.3d 1122, 1126 (10th Cir. 2017) ("By its plain language, the statute allows a § 2255 motion to be filed within one year of 'the date on which the right *asserted* was initially recognized by the Supreme Court,'" and "Snyder's § 2255 motion did just that, alleging, in pertinent part, that his 'ACCA sentence is no longer valid under *Johnson*.'") (emphasis in original)).

The government argues that Salinas's claim does not rely on *Johnson*—and thus does not trigger § 2255(f)(3)—because "*Johnson* is unnecessary to his argument." Dkt. No. 35 at 3. The government argues that Salinas, at the time of his sentencing, could have challenged the Court's determination that a Texas conviction for aggravated sexual assault was a violent felony, using the same reasoning that he relies on in his § 2255 motion. Dkt. No. 13 at 10.

The government's argument fails to acknowledge the state of the law in 2011, when Salinas was sentenced. The challenge that Salinas now brings was foreclosed by Fifth Circuit precedent, which established that aggravated sexual assault as defined by the Texas Penal Code was a violent felony under the ACCA's residual clause. By 2011, the Fifth Circuit had held that the crime of aggravated sexual assault of a minor victim "is inherently violent" because "sexual offenses by adults against children carry the inherent risk of force upon or injury to the child." *United States v. Rayo-Valdez*, 302 F.3d 314, 319 (5th Cir. 2002). In other words, in 2011, Salinas's conviction for aggravated sexual assault was a violent felony under the ACCA because it "involve[d] conduct that present[ed] a serious potential risk of physical injury to another." *See* § 924(e)(2)(B)(ii) (defining violent felony, under the residual clause, as a crime that "involves conduct that presents a serious potential risk of physical injury to another."); *see also Rayo-Valdez*, 302 F.3d at 316-17, 319 (recognizing that sexual abuse of a minor, in violation of Texas Penal Code § 22.021, was "inherently violent," even though the offense conduct can be "forcible or not."). Therefore, *Johnson*—which voided the residual clause—is

necessary to Salinas's claim, and his statute of limitations began to run on June 26, 2015—the date that the Supreme Court announced *Johnson*. *See Williams*, 897 F.3d at 662.

Salinas had one year from that date—or until June 26, 2016—to timely file his § 2255 motion. *See Beeman*, 871 F.3d at 1219 (citations omitted) ("Because the Supreme Court issued *Johnson* on June 26, 2015, a § 2255 movant wishing to raise a *Johnson* claim had until June 26, 2016, to file a motion obtaining that claim."). He first moved for relief under § 2255 in June 2017. His motion is, therefore, time-barred absent equitable tolling.

## Equitable Tolling

The one-year limitations period is subject to equitable tolling in "'rare and exceptional circumstances.'" *United States v. Riggs,* 314 F.3d 796, 799 (5th Cir. 2002) (citing *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir. 1998)).

> "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (internal quotation marks and citation omitted). "[T]he principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Unfamiliarity with the legal process does not justify equitable tolling. *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999).

*United States v. Kirkham*, 367 F. App'x 539, 541 (5th Cir. 2010) (per curiam).

"[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights

diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). The United States Supreme Court recently reaffirmed "that the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Id.* at 756 (emphasis in original).

Whether a movant has met his burden to establish extraordinary circumstances is a highly fact-dependent inquiry. *See Holland*, 560 U.S. at 653-54 (remanding for "consider[ation] in detail the facts of this case to determine whether they indeed constitute extraordinary circumstances sufficient to warrant equitable relief."); *see also Hardaway v. Davis*, 684 F. App'x 444, 446 (5th Cir. 2017) (citation omitted) ("The habeas petitioner bears the burden of establishing that equitable tolling is warranted."). And where the movant has shown such circumstances, he need only exercise "reasonable diligence," not "maximum feasible diligence" under those circumstances. *Holland*, 560 U.S. at 653 (internal citation and quotation marks omitted).

The BOP's mistake in entering an early release date in the E-designate System set in motion a cascade of circumstances that, taken together, is extraordinary. First, when Salinas checked his time sheet no sooner than late 2013, his erroneous belief that he had prevailed on his direct appeal at the Supreme Court was reinforced because he no longer had a federal detainer. The federal

government's removal of its detainer, coupled with Attorney Page's failure to apprise Salinas of his direct appeal's status, led Salinas to believe that he was free from federal custody sometime in 2013. Salinas's release from Texas prison for nearly a year until the federal government discovered its mistake further reinforced that second erroneous belief.

Moreover, because of the BOP's error, Salinas was left off the list that the FPD used to identify defendants who were eligible for *Johnson* relief. The FPD never sent Salinas a so-called "*Johnson* letter" or filed a timely § 2255 motion on his behalf—two actions that Attorney Page testified he would have taken, but for the BOP's error. Attorney Page testified that Salinas's situation was unique and that he could not recall any other similarly-situated prisoners. Dkt. No. 30 at 27.

In isolation, any of these facts—the BOP's error, which was reflected on Salinas's time sheet and caused him to be omitted from the Sentencing Commission's list, or Attorney Page's failure to keep Salinas informed about his direct appeal—might not amount to extraordinary circumstances. But *Holland* requires the Court to use a "flexible" standard that accounts for all the circumstances that Salinas faced and the cumulative effect of those circumstances. *See Williams v. Thaler*, 400 F. App'x 886, 891 (5th Cir. 2010) (per curiam) (citation omitted) ("[T]he circumstances of each case, taken together, must determine whether a particular petitioner was diligent in pursuing his claims and, therefore, entitled to equitable tolling."); *see also Socha v. Boughton*, 763 F.3d 674, 686 (7th Cir. 2014) ("It does not matter that one could look at each of the

circumstances encountered by Socha in isolation and decide that none by itself required equitable tolling. The mistake made by the district court and the state was to conceive of the equitable tolling inquiry as the search for a single trump card, rather than an evaluation of the entire hand that the petitioner was dealt."); *accord Holland*, 560 U.S. at 650. Applying that flexible standard to the facts of this case, Salinas faced extraordinary circumstances, beyond his control, that prevented him from timely seeking § 2255 relief after *Johnson*.

Salinas also has also shown that he was reasonably diligent under these extraordinary circumstances. *E.g. Jimenez v. Hunter*, ____ F. App'x ____, ____, 2018 WL 3323642, at *3 (5th Cir. 2018) (citations omitted) ("Courts confronting allegations of external obstacles more aptly focus on how severely those impediments limited the petitioner's ability to timely file."). "Whether diligence is 'reasonable' is an 'equitable, often fact-intensive inquiry' in which courts are instructed to avoid 'mechanical rules' and instead to 'draw upon decisions made in other similar cases for guidance.'" *Palacios v. Stephens*, 723 F.3d 600, 605 (5th Cir. 2013) (quoting *Holland*, 560 U.S. at 650, 654).

By the time that Salinas's statute of limitations began to run under § 2255(f)(3) in June 2015, the government's error and Attorney Page's conduct had led Salinas to believe that he owed no federal time. Indeed, the federal government had removed its detainer in July 2013, and Salinas came to learn of that fact before *Johnson* was even announced. Thus, there was no reason for Salinas to file a § 2255

motion based on *Johnson*—Salinas testified, under oath, that he believed he had no federal sentence left to challenge. *See* Dkt. No. 30 at 32, 37.

Moreover, by the time Salinas learned that he was still subject to his federal sentence, his one-year statute of limitations had already expired. On the very day that the government sought to recommit him to federal custody, he moved for § 2255 relief. *Compare Holland*, 560 U.S. at 653 ("And, the very day that Holland discovered that his AEDPA clock had expired . . . [he] prepared his own habeas petition *pro se* and promptly filed it with the District Court."), *with Arita v. Cain*, 500 F. App'x 352, 354 (5th Cir. 2012) ("[U]nlike Holland, who filed a *pro se* habeas petition the '*very day*' he 'discovered his AEDPA clock had expired,' . . . Arita retained new counsel upon discovering that [his prior counsel] did not intend to file for post-conviction relief, then waited more than a month to file in state court.") (quoting *Holland*, 560 U.S. at 653) (internal citation omitted). Salinas was reasonably diligent under the circumstances. *See, e.g.*, *Gibbs v. Legrand*, 767 F.3d 879, 890-891 (9th Cir. 2014) (holding that a prisoner was reasonably diligent in not pursuing federal habeas relief because he believed, erroneously, that his state petition for post-conviction relief was still pending).

In view of all the circumstances, the Court should equitably toll Salinas's one-year statute of limitations from the day that it expired until the day that Salinas first moved for federal habeas relief.

### The Merits

As the Supreme Court of the United States recounted in *Johnson*,

Federal law forbids certain people—such as convicted felons, persons committed to mental institutions, and drug users—to ship, possess, and receive firearms. § 922(g). In general, the law punishes violation of this ban by up to 10 years' imprisonment. § 924(a)(2). But if the violator has three or more earlier convictions for a "serious drug offense" or a "violent felony," [§ 924] increases his prison term to a minimum of 15 years and a maximum of life. § 924(e)(1); *Curtis Johnson v. United States*, 559 U.S. 133, 136 (2010). The Act defines "violent felony" as follows:

> "any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> "(ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." § 924(e)(2)(B) (emphasis added).

The closing words of this definition, italicized above, have come to be known as the Act's residual clause.

135 S. Ct. at 2555-56 (citation modified).

In *Johnson*, the Supreme Court struck down the residual clause, holding "that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." *Id.* at 2563. But *Johnson* did "not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Id.* Thus, after *Johnson*, "[a] violent felony is one of a number of enumerated offenses or a felony that 'has as an element the use, attempted use, or threatened

use of physical force against the person of another.'" *United States v. Moore*, 711 F. App'x 757, 759  (5th Cir. 2017) (per curiam) (quoting 18 U.S.C. § 924(e)(2)(B)); *see also, e.g.*, *United States v. Lerma*, 877 F.3d 628, 630 (5th Cir. 2017) (holding that in light of *Johnson* and *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016), because "Lerma's prior convictions were not for any of the four enumerated offenses listed in § 924(e)(2)(B)(ii)[, t]he only question then is . . . does the crime under the Texas aggravated robbery statute for which Lerma was previously convicted at least three times 'ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another'?") (quoting § 924(e)(2)(B)).

Here, Salinas argues that his prior Texas conviction for aggravated sexual assault—in violation of Texas Penal Code § 22.021—can no longer support his ACCA-enhanced sentence. Because aggravated sexual assault is not one of the four crimes enumerated in § 924(e)(2)(B)(ii), the Court must determine whether that crime has as an element the use, attempted use, or threatened use of physical force against the person of another. *See Lerma*, 877 F.3d at 630.

To determine whether Salinas's prior aggravated sexual assault conviction is a violent felony under the elements clause, the Court must "first [ ] determine the elements" of that crime. *See, e.g.*, *id.* at 631. "Elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (internal quotation marks and citations omitted). "At a trial, [elements] are what the jury

14

must find beyond a reasonable doubt to convict the defendant," and "at a plea hearing, they are what the defendant necessarily admits when he pleads guilty." *Id.* (citations omitted).

The version of Texas Penal Code § 22.021 in effect in 1992 when Salinas committed aggravated sexual assault provided:

(a)  A person commits an offense:

  (1)  if the person:

   (A)  intentionally or knowingly:

     (i)  causes the penetration of the anus or female sexual organ of another person by any means, without that person's consent;

     (ii)  causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or

     (iii)  causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor; or

   (B)  intentionally or knowingly:

     (i)  causes the penetration of the anus or female sexual organ of a child by any means;

     (ii)  causes the penetration of the mouth of a child by the sexual organ of the actor;

     (iii)  causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor; or

(iv)      causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; and

(2)    if:

    (A)    the person:

        (i)      causes serious bodily injury or attempts to cause the death of the victim or another person in the course of the same criminal episode;

        (ii)    by acts or words places the victim in fear that death, serious bodily injury, or kidnapping will be imminently inflicted on any person;

        (iii)   by acts or words occurring in the presence of the victim threatens to cause the death, serious bodily injury, or kidnapping of any person; or

        (iv)    uses or exhibits a deadly weapon in the course of the same criminal episode; or

    (B)    the victim is younger than 14 years of age.

Tex. Penal Code § 22.021(a) (1987).

Because Texas's aggravated sexual assault statute is "alternatively phrased, comprised of a list of several disjunctive subsections," the Court "must determine whether the statute sets forth alternative means of committing a single substantive crime, or separate elements, effectively defining distinct offenses." *United States v. Herrold*, 883 F.3d 517, 521 (5th Cir. 2018) (en banc).

"This threshold inquiry—elements or means?—is easy in this case." *Mathis*, 136 S. Ct. at 2256. "[A] state court decision definitively answers the question . . . ." *Id.* At the very least, § 22.021 defines two sets of crimes: (1) sexual assault against

a child victim who is under the age of 14 and (2) sexual assault against an adult victim without his or her consent. *Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999) ("[T]he Legislature intended that each separately described conduct"— that is, § 22.021(a)(1)(B)(i)-(iv)—"constitutes a separate statutory offense."); *Jourdan v. State*, 428 S.W.3d 86, 95 (Tex. Crim. App. 2014) (recognizing that the portion of § 22.021 at issue in *Vick*, which criminalizes sexual assault against a victim under 14, "disjunctively spec[ified] different types of conduct," while the portion of § 22.021 at issue in *Jourdan*, which criminalizes sexual assault against an adult victim without his or her consent, "simply proscribe[d] the same type of conduct . . . perpetrated by any means.") (citation and internal quotation marks omitted).

Because the Texas aggravated sexual assault statute defines multiple crimes, it is divisible. *See, e.g.*, *Lerma*, 877 F.3d at 631 ("[A] divisible statute 'list[s] elements in the alternative, and thereby define[s] multiple crimes.'") (quoting *Mathis*, 136 S. Ct. at 2249). Thus, the Court must use the modified categorical approach to "isolate the alternative under which the defendant was convicted and apply the federal template to only that alternative." *Herrold*, 883 F.3d at 522. Under that approach, the Court is "allowed to look 'to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, [Salinas] was convicted of.'" *Lerma*, 877 F.3d at 631 (quoting *Mathis*, 136 S. Ct. at 2249); *see also, e.g.*, *Shepard v. United States*, 544 U.S. 13, 26 (2005) (narrowing the class of documents to which

a federal court may look to determine the elements of the defendant's prior state conviction in assessing whether to apply an ACCA-enhanced sentence).

Here, Salinas's prior criminal judgment clearly shows he was convicted of aggravated sexual assault of a child under 14 in violation of § 22.021(a)(1)(B), (2)(B).[2] *United States v. Salinas*, 3:11-cr-19-N (1) (N.D. Tex.), Dkt. No. 22-1 at 24. "[A] person commits the offense of aggravated sexual assault if that person intentionally or knowingly engages in one or more acts of sexual conduct with a 'child.'" *In re B.D.S.D*, 289 S.W.3d 889, 896 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (analyzing § 22.021). Critically, "a child's lack of consent is irrelevant to the determination of whether an accused is guilty," so "[e]ven if a child consents or agrees to the sexual activity in fact, such consent is not given consideration for an offense" because § 22.021 "does not require proof that the victim did not consent." *Id.*; *see also Smallwood v. State*, 471 S.W.3d 601, 607 (Tex. App.—Fort Worth 2015, pet. ref'd) ("There is no element of compulsion required to be proved in the aggravated sexual assault of a child.").

"The only question remaining is whether [aggravated sexual assault under § 22.021] 'has as an element the use, attempted use, or threatened use of physical

---

[2]      But Salinas's judgment does not indicate under which subsection of § 22.021(a)(1)(B)—either (i), (ii), (iii), or (iv)—he was convicted. *Cf. Vick*, 991 S.W.2d at 833 (holding that each of those subsections sets out a different sexual act that "constitutes a separate statutory offense."). The Court need not expand the record here to determine which subsection Salinas violated. As explained above, consent-in-fact is no defense to the crime under any of the four subsections. Thus, none of those subsections requires violent force as an element.

force against the person of another' such that it qualifies as a 'violent felony' under the force clause of the ACCA." *Lerma*, 877 F.3d at 635 (quoting § 924(e)(2)(B)(i)).

The meaning of physical force in the ACCA's force clause is a question of federal law. In *Curtis Johnson*, the Supreme Court instructed that, "in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140 (emphasis in original) (citing Flores v. Ashcroft, 350 F.3d 666, 672 (7th Cir. 2003) (Easterbrook, J.)). *Curtis Johnson* emphasized that "the word 'violent' in § 924(e)(2)(B) connotes a substantial degree of force." *Id.* (citations omitted).

The United States Court of Appeals for the Tenth Circuit held that Texas's aggravated sexual assault of a child statute does not have as an element the use, attempted use, or threatened use of physical force:

> The parties do not dispute whether Madrid's conviction 'has as an element the use, attempted use, or threatened use of physical force against the person of another.' [U.S.S.G.] § 4B1.2(a)(1). A plain reading of the statutory text reveals that it does not. *Cf.* [*United States v.*] *Dennis*, 551 F.3d [986,] 989 [(10th Cir. 2008)]. Rather, the statute criminalizes "intentionally or knowingly . . . caus[ing] the penetration of the anus or sexual organs of a child by any means . . . if . . . the victim is younger than 14 years of age." § 22.021(a)(1)(B)(i) & (a)(2)(B). The crime has three components: a mens rea element, a physical act element, and an age element. Notably absent is any requirement of force or lack of consent. Under the modified categorical approach, we do not need to go further. The portion of the statute under which Madrid was convicted can be satisfied without the use, attempted use, or threatened use of force.

19

*United States v. Madrid*, 805 F.3d 1204, 1207-08 (10th Cir. 2015), *abrogated on other grounds by Beckles v. United States*, 137 S. Ct. 886, 897 (2017) (holding that the advisory United States Sentencing Guidelines are immune from vagueness challenges under the due process clause). The Tenth Circuit's reasoning—that force is not necessarily an element of aggravated sexual assault of a victim under 14 because the victim can consent in fact—is consistent with binding authority from the United States Court of Appeals for the Fifth Circuit. In *United States v. Houston*, 364 F.3d 243, 246 (5th Cir. 2004), the Fifth Circuit held that the force clause "is plainly inapplicable" to the Texas offense of statutory rape because the victim's consent provides no defense to that offense. Because a victim under the age of 14 can consent—in fact, but not in law—to sexual contact, the defendant need not necessarily use violent force to commit aggravated sexual assault under Texas law.

Indeed, the Fifth Circuit recognized as much in *Rayo-Valdez*, 302 F.3d at 316. There, the Fifth Circuit held that a prior conviction under Texas Penal Code § 22.021 was a "crime of violence"—within the meaning of an earlier version of U.S.S.G. § 2L1.2—irrespective of whether that crime satisfied the force clause. In so holding, the Fifth Circuit recognized that sexual abuse of a minor, in violation of § 22.021, can be "forcible or not." *Id.* Though aggravated sexual assault of a child as defined by § 22.021 encompasses a broader range of conduct because completing the offense does not require force, without force as a required element, a conviction under § 22.021 falls through the post-*Johnson* cracks of the ACCA.

The Government argues that, "[u]nder Texas law" a child "under the age of 14 [is] incapable of *factual* consent." Dkt. No. 13 at 17 (emphasis added). But that argument finds no support in Texas law. It is beyond dispute that under Texas law, a child under 14 is "*legally* incapable of consenting to sex with an adult." *In re B.W.*, 313 S.W.3d 818, 819 (Tex. 2010). But Texas law also recognizes that a child under 14 may be, in fact, "willing" to engage in sexual conduct—even though such "children lack the capacity to appreciate the significance or the consequences of agreeing to sex." *Id.* at 820. And, "under the rule of *Houston*, described above, *illegal* intercourse that occurs *with consent-in-fact*, i.e. assent, does not involve the use of force." *United States v. Sarmiento-Funes*, 374 F.3d 336, 341 (5th Cir. 2004), *superseded on other grounds as stated in* United States v. Rodriguez-Juarez, 631 F.3d 192, 193 (5th Cir. 2011) (emphasis added).

After *Johnson*, Salinas's prior conviction under § 22.021 no longer qualifies as a violent felony; and, therefore, Salinas's sentence-enhancement under the ACCA cannot survive. Thus, Salinas is entitled to resentencing.

### III.   Recommendation

The Court should grant Salinas's § 2255 motion, vacate his sentence, and re-sentence him.

SIGNED November 29, 2018.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).